HOWARD WILLETS *vs.* HENRY L. LANGHAAR.

Berkshire. September 10, 1912. — October 15, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, & DeCOURCY, JJ.

*Easement. Deed. Water Rights. Equity Jurisdiction,* Mandatory injunction. *Municipal Corporations. Way.*

A deed conveyed to the grantee and his heirs and assigns "the right to the use of the water from . . . two springs," describing them, "after supplying the two houses, to which logs are now laid, from the large spring, with water necessary for domestic purposes. And also after supplying water necessary for domestic purposes at my dwelling house and barnyard . . . and the said" grantee "is to have the privilege of carrying the water, as now carried, . . . to his house and tannery, with the privilege of the right to repair the same." *Held,* that by the deed there was created an easement appurtenant to the · grantee's house and tannery land, and not an easement in gross.

Mere non-user does not conclusively impair or defeat an easement created by a deed which contains no provision that it should do so.

In a suit in equity to enjoin an alleged infringement by the defendant of a right, created by a deed of a predecessor in title of the defendant to a predecessor in title of the plaintiff, to use the waters of a certain spring upon the defendant's land to the exclusion of the defendant, it appeared that the plaintiff and his predecessors in title had not used the spring for twenty-three years preceding the alleged infringement. A master found on evidence warranting the findings that, previous to the acts of the defendant complained of in the bill, there had been no use of the spring by the defendant and his predecessors in title inconsistent with the rights given by the deed to the plaintiff's predecessor in title, and that there had been no abandonment of their rights by the plaintiff or his predecessors in title. *Held,* that the question of abandonment was a question of fact, and that it could not be said that the findings of the master were plainly wrong.

In a suit in equity it appeared that the defendant infringed upon a right of the plaintiff to use to the exclusion of the defendant the water of a certain spring upon the defendant's land and, after he had received notice of the commencement of the suit, for the purpose of conducting water from the spring to a distant house belonging to him, laid a pipe in part in land of the plaintiff under a highway in a town. Previous to the laying of the pipe within the

highway the selectmen of the town after a public hearing had given the defendant permission to do so. *Held,* that a mandatory injunction should issue directing the defendant to remove the pipe laid in the plaintiff's land. *Held, also,* that it was not necessary to determine either the meaning or the constitutionality of St. 1903, c. 459, relating to permission to be given by municipalities to persons and corporations for the laying under public ways of pipes and conduits for the conveyance of water.

BILL IN EQUITY, filed in the Superior Court on October 22, 1908, and afterwards amended, praying that the defendant be enjoined from taking water from a spring on his property in New Marlborough which the plaintiff claimed a right to use to the exclusion of the defendant, and that the defendant be ordered to remove a two inch pipe which he had inserted in the spring and to replace a three quarter inch pipe which formerly had been there, to take up a one and a half inch pipe which, for the purpose of conducting the water under a highway to his house at a distance, he had laid within a part of the highway to which the plaintiff owned the fee subject to the easement of the public, and to restore the premises to their former condition.

The suit was referred to Carlton T. Phelps, Esquire, as master. The defendant sought to justify his laying of the pipe in the plaintiff's land over which the highway passed by a permission granted to him by the selectmen of New Marlborough on September 26, 1908, after a hearing of which the public had been given notice. Other facts found by the master are stated in the opinion.

Exceptions to the master's report were overruled and a final decree granting the prayers of the bill was ordered by *Crosby,* J. The defendant appealed.

The case was submitted on briefs.

*H. C. Joyner & H. M. Whiting,* for the defendant.

*J. F. Noxon, M. Eisner & J. S. Stone,* for the plaintiff.

RUGG, C. J. The defendant's predecessor in title in 1855 conveyed by deed to James H. Peak and his heirs and assigns "the right to the use of the water from the two springs situated in the meadow . . . after supplying the two houses, to which logs are now laid, from the large spring, with water necessary for domestic purposes. And also after supplying water necessary for domestic purposes at my dwelling house and barn-yard . . . and the said Peak is to have the privilege of carrying the water, as

now carried, . . . to his house and tannery, with the privilege of the right to repair the same." The plaintiff now holds title by successive conveyances to the land of which Peak was then the owner, and on which stood his house and tannery. The reference in the deed to these buildings, whither the water which was the subject of the grant was being carried, shows that an easement appurtenant to the house and tannery land and not an easement in gross was intended to be created. An easement is not presumed to be personal unless it cannot be construed fairly as appurtenant to some estate. *Dennis* v. *Wilson,* 107 Mass. 591.

Three years after the deed to Peak the tannery was closed, and in 1861 it was removed, and no building has been erected in its place. The house was occupied for residence, and water from one or both of the springs in question was conveyed to it until 1885. Since then it has been substantially unoccupied and has fallen into decay.

Certain deeds in the plaintiff's chain of title made no special reference to water rights. But they were in regular form, and the water right, being an easement appurtenant, passed by deed of the land without express mention. *Atkins* v. *Bordman,* 2 Met. 457, 464. *Brown* v. *Thissell,* 6 Cush. 254. *Crabtree* v. *Miller,* 194 Mass. 123, 126.

Mere non-user does not conclusively impair or defeat an easement created by deed. In order to have such an effect there must be an element of adverse use by the owner of the servient estate inconsistent with the continuance of the easement, or acts by the owner of the dominant estate of such conclusive and unequivocal character as manifest a present intent to relinquish the easement or such as are incompatible with its further existence. Whether there has been an abandonment is usually a question of fact. *Arnold* v. *Stevens,* 24 Pick. 106, 111. *Dana* v. *Valentine,* 5 Met. 8, 14. *Dyer* v. *Sanford,* 9 Met. 395, 402. *Owen* v. *Field,* 102 Mass. 90, 114. *Barnes* v. *Lloyd,* 112 Mass. 224, 231. *Jamaica Pond Aqueduct* v. *Chandler,* 121 Mass. 3. *King* v. *Murphy,* 140 Mass. 254. *Blood* v. *Millard,* 172 Mass. 65, 70. *Whitney* v. *Cheshire Railroad,* 210 Mass. 263, and cases cited at 269.

The master has found that there has been no use of the springs by the owners of the servient estate inconsistent with the rights

secured by the deed under which the plaintiff claims, and that the conduct of the owners of the dominant estate amounts to nothing more than a failure to exercise their rights for a period of twenty-three years, and does not constitute an abandonment. There seems to us to be no reason for reversing this finding. The evidence so far as reported is not inconsistent with it. No other facts are found by the master or appear upon the record which militate decisively against its correctness. It is possible that the evidence before the master might have warranted a different conclusion on the question of abandonment. But we cannot say that the inferences drawn by the master are not as reasonable as those sought to be established by the defendant. There is nothing which warrants us in disturbing it under the well settled practice as to master's reports. The decision of the master upon controverted questions of fact depending in part upon oral evidence, when affirmed by the court, will not be set aside unless plainly wrong. Reasonable presumptions are made in its favor. *Dean* v. *Emerson,* 102 Mass. 480. *Stevens* v. *Miner,* 110 Mass. 57, 60. *McDonough* v. *O'Niel,* 113 Mass. 92. *Morrell* v. *Kelley,* 157 Mass. 126. *Holt* v. *Silver,* 169 Mass. 435, 456. *Joslin* v. *Goddard,* 187 Mass. 165, 167. *Taber* v. *Breck,* 192 Mass. 355, 362. *Kyle* v. *Reynolds,* 211 Mass. 110, 112.

The defendant after receiving notice of the present suit laid a pipe in land within the highway to which the plaintiff owns the fee subject to the easement in favor of the public. He was not misled in any way by the plaintiff nor lulled into a belief that money damages would be accepted in settlement of any damage occasioned. Under such circumstances there is no reason why he should not remove the obstruction wrongfully placed by him on the plaintiff's land. *Curtis Manuf. Co.* v. *Spencer Wire Co.* 203 Mass. 448, 452. *Kershishian* v. *Johnson,* 210 Mass. 135, and cases there cited. Good faith or honest mistake in a case of this sort means something more than a thorough belief in the soundness of one's own legal position and in the weakness of the adverse claim of one's opponent, when the controversy has arisen before the act of trespass complained of.

It becomes unnecessary to discuss the constitutionality or meaning of St. 1903, c. 459.

*Decree affirmed with costs.*