Hillsborough,  
 May 3, 1932.

MORRIS H. BENNETT *v*. CLARENCE I. SMITH, INC. & *a*.

*Hamblett & Hamblett* (*Mr. Robert B. Hamblett* orally), for the plaintiff.

*William H. Barry* and *Demond, Woodworth, Sulloway & Rogers* (*Mr. Jonathan Piper* orally), for the defendants Barry and Hallisey.

*Wyman, Starr, Booth & Wadleigh* (*Mr. Wadleigh* orally), for the defendant Goodman.

BRANCH, J.   The statutory provisions covering these proceedings appear in chapter 217 of the Public Laws and are as follows:

"12. Buildings, &c.   If any person shall, by himself or others, perform labor or furnish materials to the amount of fifteen dollars or more for erecting or repairing a house or other building . . . by virtue of a contract with the owner thereof, he shall have a lien on any materials so furnished and on said structure, and on any right of the owner to the lot of land on which it stands."

"15. Sub-contractors.   If a person shall by himself or others perform labor or furnish materials to the amount of fifteen dollars or more, for any of the purposes specified in the three preceding sections, by virtue of a contract with an agent, contractor or sub-contractor of the owner, he shall have the same lien as provided in said sections; provided, that he gives notice in writing to the owner or to the person having charge of the property that he shall claim such lien before performing the labor or furnishing the material for which it is claimed."

"16. Notice.   Such notice may be given after the labor is performed or the material is furnished, and said lien shall be valid to the extent of the amount then due or that may thereafter become due the contractor, agent or sub-contractor of the owner."

Despite careful attention to the plaintiff's brief and oral argument, we still find difficulty in apprehending clearly the legal theory upon which he hopes to succeed.   It is plain, however, that the plaintiff regards as vitally important to his case the provision in the contract between Smith, Inc. and Barry and Hallisey that payment of the contract price shall be made "on the completion of said theatre and entrance free and clear of all liens and claims of every nature and description"; and the further provision in their supplementary agreement that a part of the consideration for the $70,000 note of Barry and Hallisey was $57,000 for the erected theatre and entrance specified.   The contention seems to be that by reason of these provisions Barry and Hallisey were not required to pay Smith, Inc. anything until the completed theatre was delivered to them; that they should, for this reason, be treated as if nothing had been paid to Smith when

the plaintiff's notice was served upon them and that the "payments from Goodman to Smith were immaterial." Upon this theory Barry and Hallisey are to be held indebted to Smith, Inc. for the amount of materials and labor furnished by it up to the time the contract was abandoned by Smith, and against this amount plaintiff's lien is to be established.

If the major premise of this argument were sound, the plaintiff's case would be utterly destroyed. If this were indeed a case in which "the parties have agreed that nothing should be paid the plaintiff [Smith, Inc.] in case of failure to perform his contract" (*Smith* v. *Newcastle*, 48 N. H. 70, 72-73), Smith, Inc. having broken its contract, could recover nothing from Barry and Hallisey even upon a *quantum meruit*, for, as pointed out in the brief for Barry and Hallisey, Smith "never has been able to deliver a completed building free of liens and encumbrances, and never can, and if the plaintiff's interpretation of the contract is correct he never has been in a position to and never can be in a position to recover anything ... On this theory nothing was due on October 2, 1928, or thereafter, and the plaintiff has no lien."

Clearly, however, the agreements of the parties are not to be interpreted in this way. It is conceded on all sides that all the agreements executed upon January 7, 1928, are to be construed together as evidencing a single contract (*Hill* v. *Huntress*, 43 N. H. 480) and thus construed, it is plain that Barry and Hallisey, despite the terms of their contract with Smith, Inc. authorized payments to it by Goodman, on their account, in advance of completion to the extent of $50,000.

In pursuance of this authority, the court finds, in effect, that Smith, Inc. was paid by Goodman the sum of $31,199.38 up to the time when the contract was abandoned. To this extent the indebtedness of Barry and Hallisey to Smith was paid. Whether this sum accurately represented the value of the labor and materials furnished up to that date is immaterial, for at the same time, by breaking its contract with Barry and Hallisey, Smith, Inc. became liable to them for the additional cost of completing the building, and the court has found that this additional cost amounted to $3,120 more than the balance of the adjusted contract price. It, therefore, seems clear that since the date when the plaintiff's notice was served upon the defendants, there has been no time when there was anything due Smith, Inc. on account of the construction work done on the building in question. On the contrary, it appears that Smith, Inc. was not only fully paid but over-

paid by a substantial amount, and since our law is designed to furnish "protection to the owner against having to pay more than is due under his contract with the contractor" (*Boulia-Gorrell Lumber Co.* v. *Company*, 84 N. H. 174, 176) the lien claimed by the plaintiff must be disallowed.

Apparently in support of his exception to the finding and ruling of the court that the sum of $31,199.38 representing advances from Goodman to Smith, Inc. were properly chargeable to Smith by Barry and Hallisey, the plaintiff argues that they might successfully have resisted the payment of a portion of this amount to Goodman because some of his advances to Smith, Inc. were made after he knew that it would probably be unable to complete its contract, and after Goodman had notice that Barry and Hallisey were entitled to rescind the contract with Smith, Inc. on account of fraud. So far as this argument involves questions of law, no error in the rulings of the trial court have been pointed out. So far as it involves questions of fact, the findings of the trial court are supported by the evidence and are conclusive here.

We think that the foregoing considerations are decisive of this case and we, therefore, find it unnecessary to pass upon the many other questions suggested in the plaintiff's brief with reference to the legal effect of the written instruments here involved and the precise legal relationships of the parties resulting therefrom.

*Exceptions overruled.*

All concurred.