Francis CARTER

v.

Melvin W. BECK and Sebasticook
Condominium Associates.

Supreme Judicial Court of Maine.

Dec. 1, 1976.

———◆———

Daviau & Daviau by Robert J. Daviau, Waterville, for plaintiff.

Marden, Dubord, Bernier & Chandler by Albert L. Bernier, Waterville, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE,* WERNICK and ARCHIBALD, JJ.

WERNICK, Justice.

Plaintiff Francis Carter, a licensed real estate broker, instituted a civil action in the Superior Court (Kennebec County) against defendant Melvin Beck, a building contractor. The complaint sought damages for breach of contract, or in the alternative, a recovery on a quasi-contract rationale. At trial, the presiding Justice allowed only the breach of contract claim to go to the jury. The jury's verdict awarded plaintiff damages of $10,000.00. Defendant has appealed from the judgment entered on the verdict.

We sustain the appeal.

The plaintiff's version of material events was as follows.

In early 1970 defendant approached plaintiff to form a corporation, the Sebasticook Condominium Associates, for the purpose of erecting a large condominium complex in the Waterville area. As originally proposed, the complex would consist of a single 24-unit building. For promoting the sale of these units defendant orally agreed to pay plaintiff a flat fee of $7,000.00, payment to be rendered when the last unit was sold. Plaintiff testified at length regarding the extensive advertising efforts he undertook for the promotion of this building.

* WEATHERBEE, J., sat at argument but died before the opinion was adopted.

Further, according to plaintiff, before construction began on the single-building project, the project was abandoned but was subsequently revived by defendant in the form of three 8-unit buildings. Plaintiff maintained that he and defendant orally agreed that the plaintiff would sell these units for a flat fee of $7,000.00, to be paid when all twenty-four units were sold. The project took longer to complete than originally envisioned and plaintiff asserted to defendant that the expenses were mounting beyond plaintiff's expectations. Plaintiff's position was that the parties then renegotiated the fees, defendant orally agreeing to pay the plaintiff $10,000.00 for the sale of the units. Plaintiff also claimed that he was to be paid in three equal installments, as each building was sold out.

Defendant's version of the facts was markedly different. Defendant testified that he agreed to pay the plaintiff $5,000.-00 upon sale of all sixteen units in the first two buildings and $5,000.00 upon the sale of the remaining eight units in the third building. Defendant said that his agreement with plaintiff was that units purchased by the defendant himself were not, for the purposes of their agreement, to be considered sold. Plaintiff denied this, maintaining that any units so purchased were to be deemed sold.

The parties ware also in disagreement in one other respect. Plaintiff testified that the total consideration for the sale of the 24 units was subsequently increased from $10,000.00 to $11,000.00, with a first installment of $4,300.00 to be paid when the first building was completely sold. Defendant denied that this agreement was made. Plaintiff testified that the first building was sold, and thereafter he repeatedly demanded the $4,300.00 from the defendant but had never received any money.

When plaintiff instituted suit, he had sold six of the units in one building to outside purchasers and the remaining two units in that building had been purchased by defendant. In neither the second nor third building were all the units ever sold.

Defendant's answer to the complaint included an affirmative defense that plaintiff could not recover because under 32 M.R.S.A. § 4004 all exclusive sales or agency contracts made by a real estate broker to list real estate for sale must be in writing to be enforceable. The presiding Justice instructed the jury that 32 M.R.S.A. § 4004 was inapplicable to the case because the contract of the parties was not a contract to sell real estate but was a promotional contract and, hence, their contract could be enforceable even if not in writing. As previously mentioned, the presiding Justice refused to allow jury consideration of the plaintiff's quasi-contract claim should the jury find plaintiff not entitled to recover for breach of an actual contract.

Defendant asserts on appeal that the presiding Justice committed reversible error in (1) instructing the jury that the contract between the parties was a promotional contract rather than a contract of sale (thereby making unnecessary an instruction that the contract could be subject to the requirements of 32 M.R.S.A. § 4004); (2) refusing to instruct the jury on the effect of material breach upon the defendant's duty to perform; and (3) refusing to instruct regarding the proper measure of damages where the plaintiff has not performed all of his obligations.

We sustain defendant's appeal on the ground that he is correct in his contention that the presiding Justice erred in instructing the jury that the parties had entered into a promotional contract rather than a contract for sale. We, therefore, find no occasion to address defendant's other points on appeal.

When, at the close of all the evidence, the presiding Justice instructed the jury that the plaintiff had not agreed to a sales contract but to one which was "more in the nature of a promotion" of the condominium, he took upon himself to resolve, as if it were a matter of law, the conflict-

ing testimony of the parties as to the nature of the contract.

This was error.

 The testimony was in conflict as to almost all of the material provisions of the agreement between the parties, including the terms and amount of payment and the nature and extent of the plaintiff's obligation. In such situation in which the existence of an oral contract is disputed or testimony as to its terms and nature is conflicting, it is for the trier of fact to ascertain and determine the nature and extent of the obligations and rights of the parties. *Akerley v. Lammi,* Me., 217 A.2d 396 (1966); *Drummond and Hospital v. Pillsbury,* 130 Me. 406, 156 A. 806 (1931); *Viles v. Realty Company,* 124 Me. 149, 126 A. 818 (1924); *Frechette v. John Meyer of Norwich, Inc.,* 164 Conn. 559, 325 A.2d 286 (1973); *Al Saucier & Son, Inc. v. McVetty,* 107 N.H. 419, 223 A.2d 520 (1966); *Field v. Golden Triangle Broadcasting, Inc.,* 451 Pa. 410, 305 A.2d 689 (1973). The presiding Justice, therefore, should have left to the jury to decide not only the terms but also the nature of the contract.

It was the proper function of the presiding Justice to instruct the jury concerning the legal meaning of the concepts "exclusive sale or agency" contract and "promotional" contract. Having thus instructed, the presiding Justice should have left to the province of the jury the application of those concepts to the facts which the jury might find as the facts constituting the dealings of the parties—thus to arrive at the ultimate determination of whether the contract between the parties was one of "exclusive sale or agency" or was "promotional."

The erroneous instruction by the presiding Justice was prejudicial to defendant. It deprived the jury of the opportunity to decide for defendant should the jury be satisfied that the parties had entered into a contract of sale which plaintiff had no legal right to enforce because it was not in writing as required by 32 M.R.S.A. § 4004.

The entry is:

*Appeal sustained.*

All Justices concurring.

POMEROY and DELAHANTY, JJ., did not sit.