Rockingham
No. 7662

MARCOU CONSTRUCTION CO., INC.

v.

TINKHAM INDUSTRIAL & DEVELOPMENT CORP.

TINKHAM INDUSTRIAL & DEVELOPMENT CORP.

v.

MARCOU CONSTRUCTION CO., INC.

March 31, 1977

*James A. Connor*, of Manchester, by brief and orally, for the plaintiff.

*Victor W. Dahar*, of Manchester, by brief and orally, for the defendant.

KENISON, C.J.  These are cross actions by the plaintiff Marcou Construction Co., Inc., a subcontractor, against the defendant, Tinkham Industrial & Development Corp., a general contractor. The cases arise out of an agreement whereby the plaintiff agreed to prepare a building site for the defendant. The plaintiff never finished the job but filed suit for payment of work performed. The defendant sued for breach of contract seeking as damages the difference between the contract price and the cost of completion. After a hearing, the Master (*Leonard C. Hardwick*, Esq.) found in favor of the defendant in both suits. *Mullavey*, J. approved the master's report. The plaintiff's exceptions were reserved and transferred to this court.

Pursuant to obtaining the contract to build the building for the Public Service Company of New Hampshire, the defendant obtained an estimate from the plaintiff regarding the cost of preparing the site. The plaintiff estimated that it could do the work for $26,502. The defendant accepted the plaintiff's proposal and signed a purchase order for the work. The plaintiff began work on November 1, 1972, and completed several items.

At some point the site became flooded and certain fill materials which the plaintiff piled up at one end of the site became saturated with water and therefore unusable. The plaintiff refused to continue working, and, throughout the spring and summer of 1973, the defendant hired other subcontractors to finish the job at a cost of $22,150.13. On July 16, 1973, the plaintiff sent a bill to the defendant for $9,470.60—$950 for certain labor, $3,284.40 balance due for gravel previously delivered, and $5,236.20 for additional imported gravel. The defendant does not dispute that the work was performed, or that the gravel was in fact imported and eventually used on the site.

■■ The issues in this case deal with the credibility of the witnesses and the sufficiency of the evidence. The master found that the plaintiff's failure to finish the job was wrongful and constituted a breach of contract. *See* 5 A. Corbin, Contracts § 1089 (1964). There is some evidence that the flooding was not the plaintiff's fault and that the plaintiff refused to continue work because the defendant would not guarantee that the plaintiff would not be liable for using the saturated materials under the parking lot. However, there is also substantial evidence that the plaintiff's activities caused the site to be flooded and the materials saturated and that the plaintiff refused to complete the job because the cost of doing so would far exceed the contract price. A master's decision based upon conflicting evidence controls unless it is clearly erroneous. *Iafolla Indus., Inc. v. Curran-Cossette Constr. Corp.*, 116 N.H. 850, 368 A.2d 1175 (1976); *Spectrum Enterprises Inc. v. Helm Corp.*, 114 N.H. 773, 329 A.2d 144 (1974). In this case the evidence supports the master's conclusion.

■ The master properly determined the amount of damages the plaintiff owed the defendant due to the breach of contract. The damage was the difference between the cost of finishing the work and the balance due the plaintiff on the contract. *Page v. Northeast Combustion Serv., Inc.*, 113 N.H. 575, 311 A.2d 119 (1973); *see* Restatement of Contracts § 346(1)(a)(i) (1932); 11 S. Williston, Law of Contracts § 1363 (3d ed. 1968). The defendant paid the plaintiff $12,454.60 and spent an additional $22,150.13 to complete the work. The total cost of the job to defendant was $34,604.73 or $8,102.73 over and above the amount for which the plaintiff had contracted to do the job. *See Bennett v. Smith*, 85 N.H. 478, 160 A. 478 (1932). Assessing the damages as such puts the nonbreaching party in the same position it would have been in by full performance. *Peter Salvucci & Sons, Inc. v. State*, 110 N.H. 136, 268 A.2d 899 (1970).

The question surrounding the plaintiff's claim for $9,470.60 is not whether the plaintiff should be paid for the work but rather whether such work was done pursuant to the original contract or was an "extra", *i.e.*, work not included in the original contract. *United States v. Matthew Cummings Co.*, 27 F. Supp. 405 (D. Mass. 1939); *Oak Const. Co. v. Highway Dep't*, 33 Mich. App. 561, 190 N.W.2d 296 (1971). If the work was part of the original contract, payment of the $9,470.60 would still leave the plaintiff in the net

position of owing the defendant $8,102.73 in damages. The additional $9,470.60 payment to the plaintiff would simply add to the defendant's overall cost of getting the job finished and thus increase the damages by the same amount. The only way the plaintiff would benefit from the award of $9,470.60 is if the work was characterized as an "extra". *Page v. Northeast Combustion Serv., Inc.*, 113 N.H. at 578,. 311 A.2d at 121 (1973); *Saucier Co. v. McVetty*, 107 N.H. 419, 223 A.2d 520 (1966).

The master found that the charge was not for extra work but was for work done pursuant to the original agreement. The bill was for cutting and filling rough grades ($950) and gravel work ($8,520.60). The bill specifically states that these costs were attributable to items four and five of the original contract. That agreement did not limit how much gravel the plaintiff was required to import. He was to buy as much as was necessary to complete the job. The facts that the plaintiff had to use much more gravel than he expected and that the defendant explicitly or implicitly consented to such additional importation of gravel do not alter the plaintiff's obligation to pay for the gravel as part of the contract. In no way did the bill represent charges for extra work. Furthermore, the facts do not indicate an agreement by the defendant to pay extra for the additional gravel. The master's finding is supported by the evidence and is correct. *See O'Donnell v. Cray,* 109 N.H. 223, 248 A.2d 83 (1968).

*Plaintiff's exceptions overruled.*

All concurred.